## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CLARE HARRIGAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Case No. 17-cv-930 (TJK)** |
| **BENJAMIN S. CARSON, Sr., Secretary** ) | |
| **United States Department of Housing and** ) | |
| **Urban Development,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS AMENDED COMPLAINT IN PART

Defendant Benjamin S. Carson, Sr., Secretary, United States Department of Housing and Urban Development ("HUD"), by undersigned counsel, provides this memorandum in support of HUD's motion to dismiss the Complaint. As discussed below, Defendant moves to dismiss the Complaint with the exception of the denial of transfer claims set forth in Counts I and II (*see infra* note 3).   Defendant otherwise moves the dismiss the Complaint in its entirety.

### BACKGROUND

Plaintiff alleges that she experienced hostility in the workplace beginning in January 2007 while she was a senior trial attorney in the Office of Litigation ("OOL") in HUD's Office of General Counsel ("OGC").[1] According to the Complaint, in January 2007, Plaintiff returned to work full time after having worked only part time for approximately six months while attending

---

[1]      Although Plaintiff is proceeding *pro se*, she is an attorney and, therefore, is not entitled to have her Complaint interpreted under a less stringent standard that might otherwise be applicable to a *pro se* filing.  *See, e.g., Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009) ("when a *pro se* plaintiff is an attorney, as is plaintiff, 'she is not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiff because an attorney is presumed to have a knowledge of the legal system and need less protections from the court'").

to a family medical matter. (Am. Compl. ¶¶ 13-14)   She contends that she began to experience a hostile work environment following her return to working full time in January 2007. (Am. Compl. ¶14)   Plaintiff worked in OOL as a senior trial attorney until June 10, 2007, when she accepted a transfer to a non-litigation position in OGC's Office of Regulatory Affairs.   (Am. Compl. ¶ 39) She contends that her acceptance of the transfer was not voluntary but instead was an attempt by her "to escape the hostile environment in the OOL." (*Id.*)   At some unspecified time thereafter, Plaintiff alleges that she was offered and accepted a transfer to the Consumer Financial Protection Bureau ("CFPB").   (Am. Compl. ¶ 73)

Although divided into nine counts, the Amended Complaint largely reasserts the claims in the original, four-count Complaint.   The principal differences are that Plaintiff adds discrete act claims of discrimination and retaliation for the denial of certain details and transfers (Counts I and II) and characterizes her transfer out of OOL in June 2007 as "forced" and asserts a claim of discrimination and retaliation on that basis (Counts III and IV).   The remaining counts essentially reassert the gender-based and retaliatory hostile work environment claims that had been previously asserted (Counts V, VI and VIII), as well as the third party reprisal claim (Count VII) and a claim based on the alleged mishandling of Plaintiff's EEO complaints (Count IX).

The Amended Complaint divides the alleged hostile work environment claims into two distinct periods:   (1) the period from January 2007 to June 2007 while she worked in OOL (Counts V-VI) and (2) the period after June 2007 when she worked in OGC's Office of Regulatory Affairs (Count VIII). As with the original Complaint, the allegations of alleged hostile conduct directed toward Plaintiff during the January 2007 to June 2007 time period are limited and do not rise to the severe or pervasive conduct required to state such a claim.   Moreover, because she has failed to plausibly plead the existence of a hostile work environment as of June 2007, Plaintiff cannot

contend that her acceptance of a transfer in June 2007 to OGC's Office of Regulatory Affairs was involuntary. Similarly, her allegations that she was subject to a hostile work environment after her transfer to the Office of Regulatory Affairs also fail to rise to the severe or pervasive conduct required to state a hostile work environment claim for that distinct period.

## STANDARDS OF REVIEW

### A.        Motion to Dismiss Pursuant to Rule 12(b)(1)[2]

Rule 12(b)(1) provides that a federal court must dismiss a case when it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Generally, "'[b]efore a court may address the merits of a complaint, it must assure that it has jurisdiction to entertain the claims.'" *Cornish v. Dudas*, 715 F. Supp. 2d 56, 60 (D.D.C. 2010) (quoting *Marshall v. Honeywell Tech. Solutions, Inc.*, 675 F. Supp. 22, 24 (D.D.C. 2009)). It is the plaintiff's burden to demonstrate subject matter jurisdiction. *Shulter v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). If the plaintiff cannot meet her burden, the court must dismiss the action. *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94 (1998) (citing *Ex parte McCardle*, 74 U.S. 506 (1868)). In considering a motion to dismiss for lack of subject matter jurisdiction, a court "'treat[s] the complaint's factual allegations as true'" and "'grant[s] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 839 F. Supp. 2d 40, 44 (D.D.C. 2012) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation

---

[2]        Because the arguments for dismissal of Count III involve, to some extent, the question of standing to sue, this motion is filed in part pursuant to Rule 12(b)(1). *See, e.g., Goldstein v. Dep't of State,* 153 F. Supp. 3d 319, 330 (D.D.C. 2016) (lack of standing is properly raised under Rule 12(b)(1)); *but see Howard R. L. Cook & Tommy Shaw Found. for Black Employees of the Library of Congress v. Billington,* 737 F.3d 767, 772 (D.C. Cir. 2013) ("The zone of interests question focuses on whether Congress intended to allow certain kinds of plaintiffs to sue under a particular statute. That is a question of statutory interpretation, not prudential calculation. And it is also not a standing question, at least not in the Article III sense of whether the plaintiff has suffered an injury caused by the defendant and redressable by the court.").

omitted)).   However, "[b]ecause subject matter jurisdiction focuses on the court's power to hear the claim, . . . the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion[.]"   *Aref v. Holder*, 774 F. Supp. 2d 147, 159 (D.D.C. 2011).

### B.     Motion to Dismiss Pursuant to Rule 12(b)(6)

Motions to dismiss under 12(b)(6) test the sufficiency of a complaint.   *Smith Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 129 (D.D.C. 2009).   "'A complaint can be dismissed under Rule 12(b)(6) when a plaintiff fails to state a claim upon which relief can be granted.'" *Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 71 (D.D.C. 2012) (quoting *Peavey v. Holder*, 657 F. Supp. 2d 180, 195 (D.D.C. 2009) (citing Fed. R. Civ. P. 12(b)(6))).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, acceptable as true, to "state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566, 570 (2007)). Indeed, the complaint must appear plausible on its face and raise a reasonable expectation that discovery will produce supporting evidence.   *Twombly*, 550 U.S. at 555.   That is, while there is no "probability requirement at the pleading stage," *id.* at 556, to survive a Rule 12(b)(6) motion to dismiss, the facts alleged in the complaint must be sufficient "to state a claim for relief that is plausible on its face." *id.* at 570.   The Court has referred to this standard as the "plausibility standard."   *Id.* at 560-61 (abandoning the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

On a motion to dismiss, under Rule 12(b)(6), the Court may consider, in addition to the facts alleged in the complaint, documents attached to, or incorporated into the complaint by reference, as well as matters of which it may take judicial notice.   *See EEOC v. St. Francis Xavier*

4

*Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997); *see also Lipton v. MCI Worldcom, Inc.*,

135 F. Supp. 2d 182, 186 (D.D.C. 2001) ("[T]he court may consider the defendant's supplementary

material without converting the motion to dismiss into one for summary judgment.   This Court

has held that 'where a document is referred' to in the complaint and is central to plaintiff's claims,

such a document attached to the motion papers may be considered without converting the motion

to one for summary judgment.'").

## ARGUMENT

### I.    Denial of Detail Claims (Counts I and II)

In Counts I and II, Plaintiff alleges, among other things, that she experienced

discrimination based on her gender and retaliation when she was denied a detail opportunity in

February 2007.[3]   (Am. Compl. ¶¶ 88, 99).   Plaintiff also alleges in Count II retaliation based on

a denial of detail in August 2010 to the Consumer Financial Protection Board.   (Am. Compl. ¶¶

70, 106)

These claims should be dismissed because a denial of a detail is not an adverse employment

action sufficient to support a claim of discrimination under Title VII.   It also is not a materially

adverse employment action to support a Title VII retaliation claim. Moreover, the denial of the

February 2007 detail opportunity preceded Plaintiff's EEO activity and therefore could not have

been the result of retaliation.

---

[3]      Counts I and II also assert claims for the denial of certain transfers as specified in those
counts.   Defendant maintains that those claims also are not viable.   However, in light of the
allegations in the Complaint related to those specific claims and D.C. Circuit authority addressing
denial of transfers, *e.g., Ortiz-Diaz v. HUD*, 867 F.3d 70, 74-75 (D.C. Cir. 2017), Defendant is not
moving to dismiss those claims at the pleading stage.   Defendant will address those claims at the
time it files its motion for summary judgment.

An adverse employment action is a prerequisite to a claim of discrimination under Title VII and is limited to actions that affect the terms and conditions of employment. *Baloch v. Kempthorne,* 550 F.3d 1191, 1198 n. 4 (D.C. Cir. 2008).  In contrast, to establish an actionable event for a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," which can involve a broader category of conduct. *Burlington N. & Santa Fe Ry Co. v. White,* 548 U.S. 53, 68 (2006).  An action is materially adverse when "it well might dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*  However, "'not everything that makes an employee unhappy is an actionable adverse action.'" *Bridgeforth v. Jewell,* 721 F.3d 661, 663 (D.C. Cir. 2013).

The requirement that conduct be materially adverse is intended to separate significant harms from trivial harms, such as petty slights or minor annoyances that often take place at work and that all employees experience, and which do not rise to the level of being materially adverse. *Burlington*, 548 U.S. at 67-69.  "A tangible employment action in most cases inflicts *direct* economic harm." *Douglas v. Donovan,* 559 F.3d 549, 552 (D.C. Cir. 2009).  While a "plaintiff alleging retaliation may rely on more subtle actions to make his case," the plaintiff still must establish materially adverse harm that is not "'unduly speculative.'" *Bridgeforth,* 721 F.3d at 663 (quoting *Douglas,* 559 F.3d at 553).

The denial of a temporary assignment typically does not constitute an adverse employment action sufficient to support a claim of discrimination or a materially adverse action sufficient to support a retaliation claim. *Maramark v. Spellings,* 2007 U.S. App. LEXIS 22545, at *2 (D.C. Cir. Sept. 20, 2007) ("the denial of a five-month detail that might have allowed [plaintiff] to secure a permanent position at DOE, is too speculative to constitute an 'objectively tangible harm."); *Kangethe v. District of Columbia,* 206 F. Supp. 3d 661, 670 (D.D.C. 2016) ("As a general matter,

6

failure to appoint an individual to a temporary position is usually not sufficient to constitute an adverse action.")   Although there can be exceptions to this rule when a plaintiff adequately pleads that the position would have provided an objective and tangible benefit, Plaintiff's conclusory allegation that the February 2007 and August 2010 detail opportunities "would have provided her career enhancing opportunities" (Am. Compl. ¶¶ 18,70,  88, 99, 106) amounts to the type of "generalized and speculative assertions of benefits" that are insufficient. *Kangethe,* 206 F. Supp. 3d at 670.

Similarly, the speculative allegation that the August 2010 detail would have provided "a higher salary" also is insufficient.   *Id.*   This was a detail opportunity, not a permanent position. Thus, the allegation that she would have received a "higher salary" from the detail is premised on her speculation that "her chance of getting a position at the CFPB would be greater if she were permitted to do a detail."   (Am. Compl. ¶70)   These allegations are too speculative to assert an adverse employment action or a materially adverse action.   Indeed, according to Plaintiff's own allegations, she subsequently obtained a permanent transfer to the CFPB without having first been detailed there and began having difficulty with her supervisor at the CFPB on her "first day" at that new job.   (Am. Compl. ¶ 73)   Thus, in light of these allegations, a reasonable inference cannot be drawn that a temporary detail to the CFPB would have improved Plaintiff's chances of obtaining a permanent position. *See Kangethe,* 206 F. Supp. 3d at 671.

Plaintiff also alleges that the February 2007 detail – which involves the time period prior to her transfer out of OOL in June 2007 – would have provided her with the "opportunity to avoid further discrimination in the OOL, and the opportunity to avoid the defendant's actual and threatened discrimination sanctions and suspension." (Am. Compl. ¶¶ 88, 99).   That allegation, however, also is insufficient to render the denial of the February 2007 detail an adverse

employment action or a materially adverse action.    According to the Complaint, at the time
Plaintiff was denied the detail opportunity in February 2007, she had not yet received the
reprimand – what she refers to as "sanctions" – nor had the suspension which never materialized
been threatened.   (Am. Compl. ¶¶ 28, 33-34). She has not plausibly alleged facts to create an
inference that either occurrence was foreseeable in February 2007.   Thus, she cannot use those
unknown subsequent occurrences as a basis to contend that the denial of the detail in February
2007 was materially adverse at the time.   *See Gray v. Foxx*, 74 F. Supp. 3d 55, 71 (D.D.C. 2014)
("Gray could not have been dissuaded from pursuing her charge of discrimination by an action of
which she was *wholly unaware* until, presumably, well into the formal complaint process.")
(emphasis in original).

In addition, neither a reprimand (the "sanction[]" apparently being referenced in paragraph
88 and 99) nor threatened suspension (that never materialized) constitutes a tangible and objective
harm.   *Baloch v. Kempthorne,* 550 F.3d 1191, 1199 (D.C. Cir. 2008) (observing that "courts have
been unwilling to find adverse actions" where threatened action does not actually occur); *Stewart
v. Evans,* 275 F.3d 1126, 1136 (D.C. Cir. 2002) ("This Court has held that formal criticisms or
reprimands, without any additional disciplinary action such as a change in grade, salary, or other
benefits do not constitute adverse employment actions.")   Consequently, the opportunity to avoid
such actions is the type of speculative harm that is insufficient to render the denial of a detail
opportunity an adverse employment action or a materially adverse action.

Plaintiff's contention that she sought the detail to escape "intolerable" working conditions
also fails to render the denial of that detail adverse under either a discrimination or retaliation
standard.   In February 2007, Plaintiff's allegations of alleged "intolerable" working conditions
were limited to Plaintiff being closely supervised.   (Am. Compl. ¶¶ 15-17).   Being assigned to

8

work for an "unpleasant, overly critical supervisor," however, is a "relatively minor, attenuated harm[]" that cannot render a denial of a detail to temporarily avoid such harm actionable.  *See Ortiz-Diaz v. HUD*, 867 F.3d 70, 74-75 (D.C. Cir. 2017).

Finally, Plaintiff cannot assert a retaliation claim for the denial of the February 2007 detail because she had not yet engaged in protected EEO activity at the time the detail was denied. To assert a claim of retaliation, Plaintiff must first have engaged in "protected" conduct prior to the challenged employment decision.  Because Plaintiff did not seek EEO counseling until April 24, 2007 (Am. Compl. ¶ 98), she did not engage in protected activity under the "participation" clause of Title VII until after the February 2007 decision denying her this detail opportunity.[4] Thus, she only can assert a retaliation claim for that employment decision if she engaged in conduct that falls within the "opposition" clause of Title VII prior to February 2007.  *Jones v. Walsh,* 668 F. Supp. 2d 53, 59 (D.D.C. 2009).  Title VII's opposition clause makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."  *George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005).   To fall within this standard, an employee must oppose a "practice" made unlawful by Title VII, and also must demonstrate "a good faith, reasonable belief" that the challenged "practice" violates Title VII.  *Id.*   When the challenged "practice" is an alleged hostile work environment, the act of opposition must pertain to conduct that, objectively, is sufficiently severe and pervasive as to constitute a hostile work environment.  *Id.*

Although Plaintiff contends that she opposed "defendant's unlawful discriminatory employment practices" in January 2007 (Am. Compl. ¶ 98), the act of alleged opposition described

---

[4]    It is apparent from the chronology set forth in the Amended Complaint that Plaintiff was advised of the denial of this detail prior to April 24, 2007. (*see* Am. Compl. ¶¶ 18-20)

in the Complaint is insufficient to constitute protected conduct. Plaintiff claims that, in January 2007, she complained to Associate General Counsel Nancy Christopher about being too closely supervised by Associate General Counsel Gerald Alexander. (Am. Compl. ¶¶ 15-17).    As described in those allegations, Plaintiff did not oppose a "practice made unlawful" by Title VII, but rather she complained to Ms. Christopher about Mr. Alexander's method of supervision, which falls in the category of a "relatively minor, attenuated harm[]" not a hostile work environment. *See Ortiz-Diaz*, 867 F.3d at 74-75; *George,* 407 F.3d at 417.    Consequently, the Complaint does not plausibly allege that Plaintiff complained in January 2007 of a "practice" prohibited by Title VII (i.e., conduct rising to the level of a hostile work environment) but instead at most establishes that she complained of non-protected "minor, attenuated harm[]." Thus, because the denial of the February 2007 detail opportunity preceded Plaintiff's protected activity, her retaliation claim based on the denial of that detail should be dismissed.

## II.    Plaintiff's Forced Transfer (Counts III-IV) and Hostile Work Environment Claims (Counts V-VI and VIII) Should Be Dismissed Because Plaintiff Has Failed To Plausibly Allege The Requisite Severe or Pervasive Conduct To State A Claim.

Plaintiff's allegations of a gender-based and retaliatory hostile work environment can be divided into two distinct periods: (1) the period from January 2007 to June 10, 2007 when she transferred out of OOL (Counts V-VI) and (2) the period after June 10, 2007 (Count VIII).[5]   This

---

[5]    Counts V, VI and VIII of the Amended Complaint, which are entitled "Discrimination" and "Retaliation", cannot reasonably be read as asserting independent claims based on discrete employment actions.   Indeed, most of the conduct alleged in these counts does not pertain to any type of discrete personnel action that could form the basis for such a claim but instead is addressed to such things as criticizing Plaintiff's work or speaking to Plaintiff in a condescending manner. That type of conduct is not independently actionable as a discrete act claim.   To the extent these counts include discrete actions – such as the alleged denial of a detail or transfer, a reprimand or a threatened suspension – the defects in such claims (to the extent asserted as independent acts of disparate treatment) are addressed in this motion in the section above discussing Counts I and II.

distinction is significant because Plaintiff also contends that she was "forced" to accept a transfer out of OOL on June 10, 2007, and attempts to assert a discrimination and retaliation claim based on that allegation. (Counts III-IV).   Defendant understands Plaintiff to be proceeding under a theory that her acceptance of that transfer opportunity in June 2007 was not voluntary because her working conditions in OOL were intolerable.   To assert such a claim, however, Plaintiff must first adequately plead the existence of a hostile work environment as of the date of the transfer.   *Peters v. District of Columbia,* 873 F. Supp. 2d 158, 204 (D.D.C. 2012) (quoting unpublished D.C. Circuit opinion for the principle that "'the failure of [plaintiff's] constructive discharge claim follows *a fortiori* from the failure of her other claims' of hostile work environment").

Thus, the "forced" transfer claims in Counts III and IV overlap with the hostile work environment claims (Counts V-VI and VIII) and are addressed with those claims in the discussion below.   As established below, because Plaintiff's allegations for the period of January 2007 to June 10, 2007 are insufficient to establish a hostile work environment, her hostile work environment claims and her "forced transfer" claims should be dismissed.   As also established below, Plaintiff's allegations for the period after June 2007 when she no longer worked in OOL also fail to plead a hostile work environment claim for that distinct period.

### A.  Standard To Assert A Hostile Work Environment Claim

A hostile work environment exists only "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."   *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations and citations omitted); *see Brantley v. Kempthorne*, No. 06-1137, 2008 U.S. Dist. LEXIS 38406, at *26 (D.D.C. May 13, 2008) ("[A] hostile work environment claim must be based on incidents comprising one unlawful employment

11

practice of intimidation, insult and ridicule that pervades plaintiff's day-to-day working life.").   In determining whether a hostile work environment exists, courts must "look at the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."   *Smith v. Jackson,* 539 F. Supp. 2d 116, 137 (D.D.C. 2008). There is both an objective and subjective component to the analysis.   The conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment that a reasonable person would find hostile or abusive" and Plaintiff must have subjectively perceived the environment as intolerable or Defendant's conduct cannot be said to have altered the conditions of her employment. *Harris,* 510 U.S. at 21-22.

Courts consistently apply this demanding hostile work environment standard "to ensure that Title VII does not become a general civility code," and to "filter out complaints attacking the ordinary tribulations of the workplace."   *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).   "Even a few isolated incidents of offensive conduct do not amount to actionable harassment."   *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).   Essentially, a viable hostile work environment claim requires that the challenged conduct "be extreme to amount to a change in the terms and conditions of employment."   *Faragher*, 524 U.S. at 788.

Where Plaintiff's hostile work environment claim is based entirely on conclusory allegations, or otherwise fails to plausibly plead facts sufficient to rise to the requisite severe or pervasive conduct, the claim may be dismissed on Rule 12(b)(6) grounds.   *See, e.g., Barrett v. Pepco Holdings,* No. 17-00107, 2017 U.S. Dist. LEXIS 131055, at *13 (D.D.C. Aug. 17, 2017) ("Plaintiff's Second Amended Complaint does not plausibly allege that [a hostile work]

environment existed."); *Golden v. Mgmt. & Training Corp.,* No. 16-1660, 2017 U.S. Dist. LEXIS 113582, at *20 n.7 (D.D.C. July 21, 2017) (finding the "alleged harassing behavior" to not be "sufficiently severe, pervasive, or extreme to rise to the level of an actionable hostile work environment"); *Allen v. Napolitano,* 774 F. Supp. 2d 186, 205 (D.D.C. 2011) ("In this case, plaintiff's allegations are not sufficiently severe or pervasive to rise to the level necessary to support a hostile work environment claim. Her claims that she was excluded from meetings, received unreasonable deadlines, denied training opportunities, and assigned busy work assignments did not cause objectively tangible harm to the terms or conditions of her employment").

**B. The Pre-June 2007 Conduct Does Not State A Gender-Based Or Retaliatory Hostile Work Environment Claim Or Support A Claim That The June 2007 Acceptance Of A Transfer Was Involuntary.**

Plaintiff identifies the following alleged actions by the agency as the basis for her claims of a gender-based and retaliatory hostile work environment for the pre-June 2007 period: (1) "treating plaintiff less favorably than similarly situated male attorneys"; (2) "addressing Plaintiff publicly and privately in a hostile, condescending manner"; (3) "assigning plaintiff an impossible amount of work with short deadlines"; (4) "stalking plaintiff"; (5) "expressing multiple petty criticisms of plaintiff's work"; (6) "publicly and private[ly] disparaging plaintiff's work ethic, professionalism and personality"; (7) "scrutinizing plaintiff's time and attendance"; (8) "falsely suggesting that plaintiff was not working 40 hours a week"; (9) "falsely suggesting to others that plaintiff has, or may have, mental health problems"; (10) "revoking a detail to another office"; (11) "revoking a transfer to another office"; (11) "attempting to suspend plaintiff for two weeks without pay"; (12) "officially reprimanding plaintiff"; (13) "forcing plaintiff to transfer to an

undesirable, non-litigation position." (Am. Compl. ¶¶ 126, 133) The factual allegations on which these assertions are based appear at paragraphs 15 to 39 of the Amended Complaint.

### 1. The Pre-June 2007 Conduct Was Not Severe Or Pervasive.

To prevail on a hostile work environment claim, Plaintiff "must first show that . . . she was subjected to 'discriminatory intimidation, ridicule, and insult' that [was] 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Brooks v. Grundman*, 748 F.3d 1273, 1276 (D.C. Cir. 2014). A hostile work environment claim, moreover, cannot be based on an "array of unrelated [alleged] discriminatory or retaliatory acts" that are not sufficiently connected to each other. *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011); *see also Burkes v. Holder*, 953 F. Supp. 2d 167, 177-78 (D.D.C. 2013) (limiting race-based hostile work environment claim only to related conduct).

Plaintiff asserts a hostile work environment claim based on the following categories of conduct: alleged criticism and supervision of Plaintiff's work in OOL, isolated employment actions (i.e., threatened suspension, denial of transfer and reprimand), "stalking" the hallway by a female supervisor,[6] workload, including tight deadlines of the type that are not uncommon in

---

[6] The so-called "stalking" not only lacks the requisite severity or pervasiveness to support a hostile work environment claim, *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 95 (D.D.C. 2009) ("accepting his allegation that he felt 'stalked' by the constant scrutiny of his supervisor, none of the factual allegations support an inference of a physical threat"), but Plaintiff has not plausibly alleged how this conduct, by a female supervisor, was motivated by Plaintiff's gender. *See Gordon v. Duke*, No. 14-917, 2017 U.S. Dist. LEXIS 135842, at *24 (D.D.C. Aug. 24, 2017) ("Title VII does not ban all workplace hostility; instead, it makes employers liable only when hostility is directed at a protected class or those engaging in protected activities. Put another way, 'the plaintiff must establish a causal connection between the harassment and her protected activity [or status] to succeed on the claim.'"); *Orgain v. City of Salisbury*, No. 07-1698, 2008 U.S. App. LEXIS 26495, at *36 (4th Cir. Dec. 29, 2008) (noting the "common sense notion" that a decisionmaker is unlikely to discriminate against a member of her same protected class); *Horvath v. Thompson*, 329 F. Supp.

litigation,[7] and alleged comments about Plaintiff that she did not witness but instead were reported to her by co-workers.[8]

Even if considered collectively, this alleged conduct is not sufficient to state a hostile work environment claim.  *See, e.g., Brooks,* 748 F.3d at 1277 (isolated incident of frustration, in which supervisor allegedly yelled at plaintiff and violently threw a book on a table, does not rise to the level of severity indicating hostility or abuse); *Veitch v. England,* 471 F.3d 124, 130-31 (D.C. Cir. 2006) (holding that non-selection for a desirable position, assignment to undesirable duties, sharing a small office, and being criticized did not make out a hostile work environment causing constructive discharge); *See Charles v. D.C. Dep't of Youth Rehab. Servs.*, No. 16-7036, 2017 U.S. App. LEXIS 9325, at *7 (D.C. Cir. May 26, 2017) ("a series of hiring denials cannot support a

---

2d 1, 5 (D.D.C. 2004) (the burden to establish gender discrimination "is even tougher here since plaintiff's gender is the same as that of the selecting official").

[7]     Plaintiff makes the conclusory allegation that she was assigned "an impossible amount of work" (Compl. ¶ 126), but she fails to plead facts to support that conclusory assertion.  *See, e.g., Barrett v. Pepco Holdings,* No. 17-0107, 2017 U.S. Dist. LEXIS 131055, at *14 (D.D.C. Aug. 17, 2017) ("Plaintiff's allegation that her other supervisor physically threatened and intimidated her is unsupported by any factual content. Such a conclusory allegation does not allow the court to infer that Plaintiff was subjected to a hostile work environment . . . .").  The specific allegations regarding workload pertain to such things as having a short deadline to prepare "complex" legal briefs and having to work late nights and weekends.  (Am. Compl. ¶¶ 20, 22)  Given that Plaintiff's position was a "senior trial attorney," these allegations fail to support the allegation that Plaintiff was assigned an "impossible amount of work."

[8]     Plaintiff alleges that between February and March 2007, "a number of HUD employees told the plaintiff that Ms. Christopher had expressed a false concern about plaintiff's mental health; that she asked nosy questions about plaintiff's personal life; and that she made derogatory statements about plaintiff's work product and her professionalism."  (Am. Compl. ¶ 20)  Because Plaintiff was not present when these alleged statements were made, she could not have subjectively perceived the workplace to be hostile based on those alleged statements. *See Stewart v. Gates,* 786 F. Supp. 2d 155, 168 n.7 (D.D.C. 2011) (information unknown to plaintiff at time of resignation cannot be a basis for a constructive discharge claim);

single, ongoing hostile work environment claim"); *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 56 (D.D.C. 2004) ("[c]riticisms of a subordinate's work and expressions of disapproval (even loud expressions of disapproval) are the kinds of normal strains that can occur in any office setting."); *Allen v. Napolitano,* 774 F. Supp. 2d 186, 205 (D.D.C. 2011) (plaintiff's "claims that she was excluded from meetings, received unreasonable deadlines, denied training opportunities, and assigned busy work assignments" were not sufficient to state a hostile work environment claim); *Hutchinson v. Holder,* 815 F. Supp. 2d 303, 322 (D.D.C. 2011) ("Allegedly insulting emails sent over a period of years 'are the sort of isolated acts that courts have consistently rejected as the basis for Title VII claims'" as are "negative performance reviews — even if inaccurate" – because '[c]riticisms of a subordinate's work and expressions of disapproval (even loud expressions of disapproval) are the kinds of normal strains that can occur in any office setting . . . . [T]hey do not demonstrate a work environment that was pervaded by discrimination.'"); *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (finding insufficient to state a hostile work environment claim plaintiff's allegations that "management passed him over for performance awards, lowered his performance evaluations, unfairly reprimanded and criticized him, made disparaging remarks about his EEO complaints, closely scrutinized his work, refused him a window cubicle, removed some of his duties, . . . den[ied] a noncompetitive promotion, den[ied] a within-grade increase, and oppos[ed] his transfer to another office or detail assignment"); *Ricci v. Kerry*, No. 11-2185, 2013 U.S. Dist. LEXIS 135459, at *32 (D.D.C. Sept. 23, 2013) ("this standalone incident of informal counseling or discipline—that did not carry any adverse consequences in and of itself—is a similarly routine, work-related action that is insufficient to support a viable hostile work environment claim").

Thus, the acts of harassment alleged by Plaintiff in support of her gender-based and retaliatory hostile work environment claim are not sufficiently "extreme to amount to a change in the terms and conditions of her employment." At most, they are "common workplace grievances" that "do not demonstrate a work environment that was pervaded by discrimination." *See Brantley,* 2008 U.S. Dist. LEXIS 38406, at *27.

### 2. The Alleged Conduct Does Not Support An Inference That Plaintiff's Acceptance Of A Transfer Out Of OOL In June 2007 Was Involuntary.

Plaintiff also claims based on the same pre-June 2007 conduct that Defendant had made her working conditions so intolerable that she had no choice but to accept a transfer out of OOL. In claiming that the transfer was "forced" upon her based on intolerable working conditions, Plaintiff appears to be asserting a claim for a "constructive involuntary transfer," which is a variance of the more commonly asserted claim of "constructive discharge."   In either case, the plaintiff is contending that her working conditions were so intolerable that her transfer to a less desirable position (or her resignation in the case of a constructive discharge claim) should not be considered voluntary.   Courts treat a "constructive involuntary transfer" claim under the same standard as a constructive discharge claim.   *See Peters v. District of Columbia,* 873 F. Supp. 2d 158, 204 (D.D.C. 2012).

The law presumes that a transfer (or resignation in the case of a constructive discharge) is voluntary and thus not an actionable adverse employment action unless the plaintiff pleads facts tending to show that the resignation was coerced by the employer's creation of intolerable working conditions.   *See id.* at 196; *see also Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 78-79 (D.D.C. 2006).   To assert a claim of constructive involuntary transfer, Plaintiff must establish that

17

"aggravating factors justified the plaintiff's conclusion that she had no option but to [accept a transfer]." *See Stewart,* 768 F. Supp. 2d at 168; *see also Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 17 (D.D.C. 2008) (citing *Clark v. Marsh*, 665 F.2d 1168 (D.C. Cir. 1981)).

A constructive involuntary transfer claim involves both an objective and subjective component. The circumstances must be considered intolerable from an objective standpoint, which is a "relatively high threshold" that can be decided as a matter of law. *Kalinoski*, 435 F. Supp. 2d at 59; *Robinson-Reeder*, 532 F. Supp. 2d at 17-18. Plaintiff also must have subjectively perceived the environment as intolerable or Defendant's conduct cannot be said to have altered the conditions of her employment. *See Harris*, 510 U.S. at 21-22; *Stewart,,* 786 F. Supp. 2d at 168 n.7 (information unknown to plaintiff at time of resignation cannot be a basis for a constructive discharge claim); *Delph*, 130 F.3d at 354 (applying *Harris* to a constructive discharge claim).

From a pleading standpoint, a plaintiff who fails to adequately plead the existence of a hostile work environment necessarily falls short of pleading the requisite intolerable working conditions required to assert a constructive involuntary transfer claim. *Peters,* 873 F. Supp. 2d at 204. For reasons discussed above, Plaintiff has failed to plead the existence of a hostile work environment as of June 2007. Consequently, her claim of a "forced" transfer in June 2007 also is inadequate.

### C.   The Post-June 2007 Conduct Was Not Severe Or Pervasive

Plaintiff also alleges other conduct that post-dates June 2007, that she contends supports a hostile work environment claim for that distinct time period. (Am. Compl. ¶ 145)   These conclusory assertions pertain to alleged conduct occurring after Plaintiff left OOL in June 2007,

18

and thus is not connected to any alleged conduct that occurred prior to June 2007 while she was in OOL. *Mason v. Geithner*, 811 F. Supp. 2d 128, 179 (D.D.C. 2011) ("the Court can only conclude that these acts are so different in kind and remote in time that they cannot possibly comprise part of the same hostile work environment"); *Nurridin v. Bolden,* 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("[T]he alleged events are temporally diffuse, spread out over a four-year period, suggesting a lack of pervasiveness"). Therefore, for purposes of evaluating whether Plaintiff has adequately pled a hostile work environment claim, the post-2007 conduct at issue in Count VIII should be assessed independently of the conduct that allegedly occurred while Plaintiff worked in OOL that is the subject of Counts V-VI.

With respect to the post-June 2007 conduct, Plaintiff alleges that she was accused of an attempted violent felony in January 2008 when Associate General Counsel Christopher allegedly filed an internal complaint contending that Plaintiff left "nail laced cupcakes" at the 2007 OOL holiday party. (Am. Compl. ¶ 55)  Plaintiff also alleges that she was questioned by Office of Inspector General ("OIG") agents in the summer of 2008 (Am. Compl. ¶ 60) and makes the conclusory assertion that Defendant "permanently" damaged her reputation through such conduct (Am. Compl. ¶ 145).   Such allegations fail to rise to the requisite level of severity or pervasiveness to state a claim. *Hutchinson,* 815 F. Supp. 2d at 317, 321-23 (allegedly insulting emails and alleged false statements with regard to an OPR investigation are not sufficient to state a hostile work environment claim); *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 103-04 (D.D.C. 2010) (allegation that plaintiff was placed on administrative leave due to a false accusation of misconduct insufficient to support a hostile work environment claim).

Plaintiff's allegation that she was denied details and transfers (Am. Compl. ¶ 145) as it pertains to the post-June 2007 period refers to the alleged denial of a transfer in 2008 to the Federal Housing Finance Agency and the alleged denial of a detail to the CFPB in late 2010. (Am. Compl. ¶¶ 62-65 and 68-70)   For reasons already addressed, the occasional denial of a transfer does not support a hostile work environment claim.   *Nurriddin,* 674 F. Supp. 2d at 94.   Similarly, Plaintiff's bare assertion that she was threatened with removal from employment, (Am. Compl. ¶ 145), also is insufficient. *See, e.g., Ricci*, 2013 U.S. Dist. LEXIS 135459, at *31 ("single, personnel-related decision falls short of the severe or pervasive threshold to state a viable hostile work environment claim"); *cf. Baloch,* 550 F.3d at 1199 (observing that "courts have been unwilling to find adverse actions" where threatened action does not actually occur).

Plaintiff also asserts as a basis for her retaliatory hostile work environment claim that she was assigned "dirty, unpleasant tasks."   (Compl. ¶ 145)   The specific allegations supporting that conclusory assertion appear in paragraph 72 of the Amended Complaint, where Plaintiff alleges that, between August 2010 and June 2011, Deputy General Counsel Cruciani assigned Plaintiff the "undesirable task of sorting, organizing and shredding thousands and thousands of RESPA documents.   (Am. Compl. ¶ 72) Plaintiff alleges that this assignment required her to sort documents, fill a large rolling dumpster, roll the dumpster "into HUD's dirty basement," and use a "large, dirty industrial shredder to dispose of the unneeded documents."   (*Id.*)   However, assignment to undesirable duties does not rise to the level of severe or pervasive conduct necessary to support a hostile work environment claim.   *See Veitch v. England,* 471 F.3d 124, 130-31 (D.C. Cir. 2006); *Brooks v. Grundmann*, 851 F. Supp. 2d 1, 6 (D.D.C. 2012) ("non-selection for a

desirable position, assignment to undesirable duties, sharing a small office, and being criticized by supervisors do not establish a hostile work environment").

Finally, Plaintiff cites as a basis for this claim an allegation that Defendant took adverse action against her friend, Ms. Roman, and mishandled the EEO process.  (Am. Compl. ¶ 145) Those assertions are the subject of Counts VII and IX and are addressed below.  For the same reasons stated below, those allegations fail to support a claim of a hostile work environment directed toward Plaintiff.

## IV.   Counts VII and IX Fail To State Cognizable Claims

In Count VII Plaintiff alleges that she suffered retaliation based on certain "materially adverse actions" taken against a co-worker, Ms. Roman based on Ms. Roman's protected conduct. (Am. Compl. ¶¶ 138-39)   In Count IX, Plaintiff alleges retaliation based on the agency's alleged interference with processing and investigation of her EEO complaints.   (Am. Compl. ¶¶ 150-152) Neither claim is cognizable under Title VII.

### A.  Plaintiff Lacks Standing And The Requisite Close Relationship To Assert A Third-Party Reprisal Claim Based On Actions Against Ms. Roman.

In Count VII, Plaintiff asserts a retaliation claim that is based on employment actions allegedly taken by the agency against a co-worker, Ms. Roman,who allegedly supported Plaintiff in helping to prevent Plaintiff's suspension without pay and in the EEO process.   (Am. Compl. ¶ 139).  Plaintiff, however, fails to plead any objectively tangible harm to Plaintiff that resulted from the employment actions that she identifies as retaliatory in this count.   According to the Complaint, those employment actions were directed at Ms. Roman, not Plaintiff, and impacted Ms. Roman, not Plaintiff. (*Id.*) Plaintiff's claim of retaliation in Count VII, therefore, is not

actionable because Plaintiff does not allege that she suffered any materially adverse action as a result of Ms. Roman's protected activity.

While the Supreme Court has recognized a limited category of so-called "third-party reprisal" claims as actionable, *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011), that exception is not applicable here for two reasons.   First, unlike here, the plaintiff (Thompson) in that case suffered objectively tangible harm in that he was terminated three weeks after his fiancé (Regalado) had filed an EEO complaint.   Thompson, who had not himself engaged in any prior protected activity, claimed that his firing was retaliation against his fiancé for her protected activity.   *Id.* The Court held that, although Thompson had not engaged in protected activity, he could nevertheless assert a retaliation claim for his firing on the theory that his firing was reprisal for his fiance's protected activity. *Id.* at 173.

In allowing Thompson to proceed based on another's protected conduct, the Court did not remove the requirement that a plaintiff in Thompson's situation still must have experienced some materially adverse action to be "aggrieved" under Title VII, and thus have standing to sue. Although the Court held that a plaintiff need not have personally engaged in EEO activity to be protected under Title VII, the Court still required that the plaintiff be within the "zone of interests protected by Title VII" to assert a retaliation claim; that is, that the employee bringing the claim must have experienced some tangible (and more than speculative) impact from the employer's actions.   *See id.* at 178; *see also Howard R. L. Cook & Tommy Shaw Found. for Black Employees of the Library of Congress v. Billington,* 737 F.3d 767, 772 (D.C. Cir. 2013) (interpreting *Thompson* as "allowing Title VII suit by *injured* employee [to proceed] over prudential standing objection") (emphasis added); *Chavez v. City of San Antonio,* No. SA-14-CV-527-XR, 2015 U.S.

22

Dist. LEXIS 110045, at *37 (W.D. Tex. Aug. 19, 2015) ("*Thompson* only stands for the proposition that [plaintiff] may argue that the City retaliated against her because [her husband] filed charges of discrimination with the EEOC. [Plaintiff] must still establish that she suffered from some adverse employment action and must still establish the causation element of her retaliation claim.").

Thompson fell within the zone of interest because he was terminated after his fiancé engaged in protected conduct.   Here, Plaintiff has not identified in Count VII any harm that *she* experienced as a result of the alleged conduct toward Ms. Roman.   (Am. Compl. ¶139) Accordingly, she cannot assert a claim of retaliation based on the conduct identified in Count VII, and that count should be dismissed.

Second, the third-party reprisal theory recognized in *Thompson* requires a sufficiently close relationship between the plaintiff and the third party that has not been alleged here.   Although the Court in *Thompson* declined to "identify a fixed class of relationships for which third-party reprisals are unlawful," the Court did provide the following guidance:   "We expect that firing a close family member will almost always meet the *Burlington* standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so . . . ." *Thompson*, 562 U.S. at 175.

Plaintiff's allegations here fall within the latter category.   In characterizing her relationship with Ms. Roman, Plaintiff alleges only that she was her "close friend" and former OOL co-worker.   (Am. Compl. ¶¶ 40, 139) Courts have declined to recognize a claim of third-party reprisal based on such a relationship.   *See, e.g., Moyer v. Jos. A Banks Clothiers,* No. 11-CV-3076, 2014 U.S. Dist. LEXIS 57732, at *14 (N.D Tex. Apr. 25, 2014) (finding relationship insufficient because "Moyer and Cortez were not family members, and were not in a dating

23

relationship or any other type of close relationship that would be covered by Title VII's prohibition on retaliatory conduct"), *aff'd*, 2015 U.S. App. LEXIS 1864, at *8 (5th Cir. Feb. 5, 2015) (affirming for "essentially the same reasons as the district court"); *Mackall v. Colvin,* No. 12-1153, 2015 U.S. Dist. LEXIS 10097, at *63 (D. Md. Jan. 29, 2015) ("Plaintiff does not allege any facts to establish that she and Little were anything more than 'mere acquaintances' or co-workers. In the absence of a close affiliation with Little, plaintiff cannot rely on Little's protected activity to establish a prima facie case of retaliation").

### B.  Title VII Does Not Afford A Cause Of Action For Mishandling Of An EEO Complaint.

In Count IX, Plaintiff alleges retaliation based on the agency's alleged mishandling of her EEO complaint and alleged interference in the EEO process.   Such a claim, however, is not cognizable under Title VII and should be dismissed.   *See, e.g., Diggs v. Potter*, 700 F. Supp. 2d 20, 46 (D.D.C. 2010) ("'there is no cause of action' for federal employees to bring retaliation or discrimination claims based on 'complaints of delay or interference in the investigative process'"); *Keeley v. Small*, 391 F. Supp. 2d 30, 45 (D.D.C. 2005); *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000) ("even if the EEO Division botched the processing of her complaint, Jordan is now already in a federal court on the merits, and any earlier mishandling is essentially moot. Jordan's failure-to-process claim does not state a claim upon which relief can be granted"); *cf. Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997) (no cause of action against EEOC for challenges to its processing of a claim).

## **CONCLUSION**

For the foregoing reasons, all claims asserted in Plaintiff's Amended Complaint, with the exception of the denial of transfer claims in Counts I and II, should be dismissed.

Respectfully submitted,

JESSIE K. LIU
D.C. BAR # 472845
United States Attorney

DANIEL F. VAN HORN
D.C. BAR # 924092
Civil Chief

By: _____/s/_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.simon@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2017, a copy of the foregoing was served on

Plaintiff by first-class United States mail, marked for delivery to:

Clare Harrigan
2100 Westview Terrace
Silver Spring, MD 20910

/s/ *Jeremy S. Simon*
Jeremy S. Simon

26