# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLARE HARRIGAN,<br><br>   *Plaintiff*,<br><br>v.<br><br>BENJAMIN S. CARSON,<br><br>   *Defendant*. | Civil Action No. 17-930 (TJK) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Clare Harrigan brings this lawsuit alleging that her supervisors discriminated and retaliated against her while she was an attorney in the Department of Housing and Urban Development's Office of General Counsel (OGC). In her amended complaint, Harrigan asserts nine counts alleging various theories of gender discrimination and retaliation under Title VII. Defendant Benjamin S. Carson, named in his official capacity as head of the Department, has moved to dismiss seven counts in full and two in part. For the reasons explained below, the Court will grant Defendant's motion in part and deny it in part: Counts I, VII, VIII, and IX will proceed, and the Court will dismiss Counts III through VI in full and Count II in part.

**I. Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). When

considering a Rule 12(b)(6) motion, the Court construes the complaint in favor of the plaintiff and grants her the benefit of all reasonable inferences from the facts alleged. *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).[1]

## II.    Analysis

### A.    Gender Discrimination (Count I)

In Count I of her amended complaint, Harrigan alleges that her supervisors discriminated against her because of her gender by denying her the chance to detail or transfer to other federal government offices. *See* ECF No. 8 ("Compl.") ¶¶ 86–109. Defendant moves to dismiss this count in part, to the extent that it is based on a detail opportunity she was allegedly denied in February 2007. ECF No. 11 ("Def.'s Mot.") at 5–7. Harrigan alleges that at that time her supervisors denied her a detail to a different section of the OGC, where she would "learn a new and interesting area of the law," receive "career enhancing opportunities," and "avoid further discrimination" by her supervisors. Compl. ¶¶ 18, 88.

Defendant argues that denial of a detail opportunity cannot be the basis of a discrimination or retaliation claim because it is not, under D.C. Circuit precedent, adverse enough to state a Title VII claim. Def.'s Mot. at 6. But the two cases Defendant cites for this proposition do not reflect such an ironclad rule. Rather, those cases—*Maramark v. Spellings*, No. 06-5099, 2007 WL 2935411 at *1 (D.C. Cir. Sept. 20, 2007), and *Kangethe v. District of Columbia*, 206 F. Supp. 3d 661, 670 (D.D.C. 2016)—hold that denial of a temporary position *can* support a Title VII discrimination or retaliation claim when the plaintiff alleges it deprived her of an objective, tangible benefit. *See also Ortiz-Diaz v. U.S. Dep't of Hous. & Urban Dev.*, 867 F.3d 70, 73 (D.C. Cir. 2017) (using the "objectively tangible harm" standard for adversity).

---

[1] The pleading standard is relaxed even more when a plaintiff is *pro se* unless, as here, the plaintiff is an attorney. *See Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009).

Harrigan asserts that, when her supervisors denied her the detail, she lost out on "career enhancing opportunities" and the ability to "avoid further discrimination" by her supervisors. Compl. ¶ 88. The two cases cited by Defendant suggest that the former allegation, standing alone, might well be too generalized and speculative to meet the pleading standard. Def.'s Mot. at 7–8. But when combined with the latter allegation, it appears to be same type of "adverse impact on the employee's potential for career advancement" that the Circuit found adverse enough to support a discrimination claim in *Ortiz-Diaz*, which postdates them. 867 F.3d at 74. The Court thus concludes that Harrigan has adequately pleaded her denial of a detail as an adverse action undergirding her discrimination claim in Count I.

B.   **Retaliation (Count II)**

Count II involves some of the same factual allegations in Count I, this time cast as a retaliation claim. Again, Harrigan alleges that her supervisors denied her a detail opportunity in February 2007, a chance to transfer to another office in April 2007, and another detail opportunity in August 2010. Compl. ¶¶ 97–106. As with Count I, Defendant moves to dismiss this count in part, to the extent that it is based on her supervisors' denial of her detail opportunities. Def.'s Mot. at 5–6. Defendant also asserts that any denial of Harrigan's February 2007 detail could not have been retaliatory because it predated her protected activity. Def.'s Mot. at 5–6, 9.

Defendant also correctly points out that in Harrigan's opposition, she failed to respond to any of his arguments about Count II. ECF No. 18 ("Def.'s Reply") at 6; *see also* ECF No. 13 ("Pl.'s Opp'n") at 8–15 (addressing arguments only as to Count I). Harrigan has thus conceded Defendant's motion to dismiss part of Count II. *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."). The

3

Court will therefore dismiss Count II to the extent that it is based on her supervisors allegedly denying Harrigan detail opportunities in February 2007 and August 2010.

> C. **Discriminatory and Retaliatory Hostile Work Environment (Counts V and VI) and Forced Transfer (Counts III and IV)**

In Counts V and VI, Harrigan alleges that her supervisors discriminated against her because of her gender and retaliated against her by creating a hostile work environment. Compl. ¶¶ 124–36. And in Counts III and IV, Harrigan alleges that her supervisors forced her to transfer to another section within the OGC to escape that hostile work environment. *Id.* ¶¶ 110–23; Pl.'s Opp'n at 18, 27. Defendant moves to dismiss all these claims because Harrigan's allegations are insufficiently severe to state a hostile work environment claim. Def.'s Mot. at 10–11.

"To prevail on [a hostile work environment] claim, a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

In both Counts V and VI, Harrigan alleges many incidents that, she says, combined to subject her to a "hostile and abus[iv]e work environment." Compl. ¶ 127. In summary, she alleges that her supervisors criticized and condescended to her; disparaged her performance, personal qualities, and mental health; micromanaged her and assigned her so much work that she could not complete it; thwarted her attempts to detail or transfer to another office; and took various tacks to improperly discipline her. *Id.* ¶¶ 15–39, 126, 133; *see also* Pl.'s Opp'n at 16, 23–24. She also alleges that one supervisor "regularly stalked up and down the hallway outside [her] office . . . and [would] stare and scowl and clench and unclench her fists," and that another supervisor "repeatedly sighed and scowled" at her in a meeting, which Harrigan "found . . .

4

physically threatening. Compl. ¶ 38. She characterizes her supervisors' intent as discriminatory and retaliatory. *Id.* ¶¶ 128, 134.

Defendant argues that Harrigan has not alleged such a severe or pervasive pattern of abuse, and the Court agrees. To be sure, Harrigan pleads a pattern of slights over a relatively compressed time period—about two years in Count V and six months in Count VI— which suggests they were more than just intermittent instances. Compl. ¶¶ 124–36. *Cf. Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 ("[T]he alleged events are temporally diffuse, spread out over a four-year period, suggesting a lack of pervasiveness."). But the pattern of events she alleges is simply not severe enough. *See Baird v. Gotbaum*, 792 F.3d 166, 172 (D.C. Cir. 2015) ("[A] long list of trivial incidents is no more a hostile work environment than a pile of feathers is a crushing weight."). A hostile work environment is one where the abuse "amount[s] to a change in the terms and conditions of employment," and that requires "extreme" misconduct.[2] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Although Harrigan has alleged many ways in which her supervisors made her life unpleasant and interfered with her performance, the alleged misconduct simply does not rise to that level. Other courts in this district have dismissed similar allegations of mismanagement and disparagement for failure to state a hostile work environment claim. *See, e.g.*, *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 137–38 (D.D.C. 2016); *Allen v. Napolitano*, 774 F. Supp. 2d 186, 205–06 (D.D.C. 2011); *Nurriddin*, 674 F. Supp. 2d at 93–94.

---

[2] Harrigan brings both a discrimination claim (Count V) and a retaliation claim (Count VI) based on her alleged hostile work environment. Because retaliation claims can be based on a broader set of adverse actions than discrimination claims, "[i]t is unclear . . . whether the same standard applies to both discriminatory and retaliatory hostile work environment claims." *Fields v. Vilsack*, 207 F. Supp. 3d 80, 92 (D.D.C. 2016). But even assuming the standard for a retaliatory hostile work environment claim is lower than that for a discriminatory hostile work environment claim, the Court finds that Harrigan's allegations do not plausibly allege such a claim.

And unfortunately for Harrigan, the standard for her forced transfer claims is even higher. A claim that an employer's abuse forced a plaintiff out of her position requires first, that a plaintiff show there was a hostile work environment, and second, that she make the "further showing . . . that the abusive working environment became so intolerable that her [departure] qualified as a fitting response." *Penn. State Police v. Suders*, 542 U.S. 129, 134 (2004). Harrigan has not adequately pleaded a hostile work environment claim, so she cannot state a claim for forced transfer either. *See id.*; *McKeithan v. Boarman*, No. 11-5247, 2012 WL 1450565 at *1 (D.C. Cir. Apr. 12, 2012) ("[T]he district court correctly determined appellant failed to state a claim of constructive discharge, because he failed to make out an underlying predicate claim of hostile work environment."). The Court will therefore grant Defendant's motion to dismiss Counts III through VI.

### D.     Third-Party Retaliation (Count VII)

In Count VII, Harrigan brings a third-party retaliation claim, alleging that her supervisors took several adverse actions against her coworker and friend, Terri Roman, in retaliation for Harrigan's participation in protected activity. Compl. ¶¶ 137–42. In doing so, Harrigan asserts that her supervisors acted against Roman to dissuade Harrigan from continuing to engage in that protected activity. *Id.* ¶ 139. Defendant moves to dismiss this claim on two grounds: (1) that third-party retaliation claims under Title VII can be brought only by the party who suffered the materially adverse action—in this case, Roman—as opposed to the employee who participated in protected activity; and (2) that Harrigan has not pleaded a close enough relationship with Roman to state a third-party retaliation claim. In support of both arguments, Defendant relies on *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011).

Defendant misreads *Thompson*. True, most of the Court's analysis addressed whether a party in *Roman's* shoes has a cause of action under Title VII. But nothing in the Court's analysis

(which answered that question in the affirmative) suggested that a party in *Harrigan's* shoes—the employee who had undertaken protected activity—could not also assert a retaliation claim under Title VII. To the contrary, the Court remarked that it was "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiance would be fired." *Id.* at 173. Given the Court's observation, it seems equally obvious that a worker such as Harrigan may, in some cases, assert a retaliation claim based on a materially adverse action against a third party. Following that logic, courts in this district have denied motions to dismiss such claims based on Defendant's misunderstanding of *Thompson*. *See Dozier-Nix v. District of Columbia*, 851 F. Supp. 2d 163, 168 (D.D.C. 2012) (plaintiff could bring retaliation claim based on husband's termination); *Ali v. District of Columbia Gov't*, 810 F. Supp. 2d 78, 89 (D.D.C. 2011) (plaintiff could bring retaliation claim based on best friend's threatened termination).

Defendant's second argument also comes up short, at least at the motion-to-dismiss stage. In *Thompson*, the Court also considered what types of relationships might sustain third-party retaliation claims, offering these guideposts: "We expect that firing a close family member will almost always meet the [material adversity] standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so, but beyond that we are reluctant to generalize." 562 U.S. at 175. Here, Harrigan alleges that she had a "close personal relationship outside of work" with Roman and that her supervisors were aware of their relationship. Compl. ¶ 40. The Court's language in *Thompson* does not, as Defendant urges, categorically bar close friendships from sustaining third-party retaliation claims; if anything, it appears to hold open that possibility depending on the particulars of the relationship and the adverse action at issue. Moreover, while Defendant cites a few cases in which courts determined, as a matter of law, that certain relationships were insufficiently close to sustain a third-party retaliation claim, those decisions

7

resolved motions for summary judgment. *See Mackall v. Colvin*, Civil Action No. ELH—12—1153, 2015 WL 412922 (D. Md. Jan. 29, 2015); *Moyer v. Jos. A. Bank Clothiers, Inc.*, Civil Action No. 3:11-CV-3076-L, 2014 WL 1661211 (N.D. Tex. Apr. 25, 2014). For all these reasons, the Court finds that Harrigan has adequately pleaded her third-party retaliation claim, and the Court will deny Defendant's motion to dismiss as to Count VII.

### E. Retaliation (Count VIII)

In Count VIII, Harrigan asserts a retaliation claim based on another set of alleged adverse actions against her. Compl. ¶ 145. Defendant argues that none of them rise to the level of material adversity required to state a retaliation claim. Def.'s Reply. at 18–20; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). But Defendant did not do so until his reply.[3] Harrigan had no opportunity to respond to those arguments, so the Court need not consider them here. *See Lu v. Lezell*, 45 F. Supp. 3d 86, 91 (D.D.C. 2014). And in any event, at least some of the actions described do meet the pleading standard for material adversity including, as described above, the denial of Harrigan's detail opportunity in February 2007. Compl. ¶ 145. For these reasons, the Court will deny Defendant's motion to dismiss Count VIII.

### F. Retaliation (Count IX)

Finally, in Count IX, Harrigan contends that her supervisors retaliated against her by interfering in the EEO investigation of her discrimination complaints. Compl. ¶ 151. She alleges many ways in which her supervisors injected bias into the EEO process and thwarted its evidence-gathering activities. *Id.* In moving to dismiss this count, Defendant argues that

---

[3] Defendant at first argued for dismissal of Count VIII on the theory that it failed to state a hostile work environment claim. Def.'s Mot. at 18–21. But unlike other counts, it does not invoke the term "hostile work environment," and in her opposition, Harrigan disclaimed any reliance on that theory. *See* Pl.'s Opp'n at 33–36. Only in his reply, then, did Defendant address whether each act individually could meet the standard for material adversity. *See* Def.'s Reply at 18–20.

8

interference in the EEO process cannot, as a matter of law, form the basis for a retaliation claim. *See, e.g.*, *Briscoe v. Kerry*, 111 F. Supp. 3d 46, 59 (D.D.C. 2015); *Diggs v. Potter*, 700 F. Supp. 2d 20, 46 (D.D.C. 2010); *see also* Def.'s Mot. 24–25; Def.'s Reply at 24–25.

The Court cannot agree with Defendant. The above cases Defendant cites mainly rely on *Keeley v. Small*, 391 F. Supp. 2d 30, 45 (D.D.C. 2005). And the court's reasoning in that case is incompatible with the Supreme Court's later clarification of the scope of adverse actions on which retaliation claims may be based in *Burlington Northern*. *See Lawson v. Sessions*, 271 F. Supp. 3d 119, 141 (D.D.C. 2017). In *Keeley*, the court held that allegations of interference with an EEO investigation could not support a Title VII retaliation claim, citing the requirement that an adverse action relate to a condition of employment. 391 F. Supp. 2d at 45. But in *Burlington Northern*, the Court held that—to the contrary—the scope of adverse actions underlying retaliation claims is not limited to actions that affect the terms and conditions of employment. 548 U.S. at 62–63. Accordingly, in light of *Burlington Northern*, plaintiffs are not categorically barred from pleading a retaliation claim based on interference with the EEO process. The Court will therefore deny Defendant's motion to dismiss Count IX.

## III. Conclusion

For all the above reasons, Defendant's Motion to Dismiss the Amended Complaint in Part, ECF No. 11, is **GRANTED IN PART** and **DENIED IN PART**. Counts III through VI are dismissed in full, and Count II is dismissed to the extent that it is based on the denial of Harrigan's detail opportunities. Defendant shall file its answer to the remaining claims by October 21, 2019.

       **SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 28, 2019